# EXHIBIT 3



1818 Market Street | Suite 3600 | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

## About Berger Montague

Berger Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal* selected Berger Montague in 12 out of 14 years (2003-2005, 2007-2013, 2015-2016) for its "Hot List" of top plaintiffs-oriented litigation firms in the United States. The select group of law firms recognized each year had done "exemplary, cutting-edge work on the plaintiffs' side." The *National Law Journal* ended its "Hot List" award in 2017 and replaced it with "Elite Trial Lawyers," which Berger Montague has won from 2018-2020. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell* and was ranked as a 2020 "Best Law Firm" by *U.S. News - Best Lawyers*.

Currently, the firm consists of 66 lawyers; 25 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

## History of the Firm

Berger Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 50 years of civil litigation. For example, the firm was one of the principal counsel for

1

plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $200 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Practice Areas and Case Profiles

### Antitrust

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 50 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price-fixing case (settlement of more than $700 million), the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion), the *Graphite Electrodes Antitrust Litigation* (settlement of more than $134 million), and the *High-Fructose Corn Syrup Litigation* ($531 million).

Once again, Berger Montague has been selected by *Chambers and Partners* for its 2020 *Chambers USA* Guide as one of Pennsylvania's top antitrust firms. *Chambers USA 2020* states that Berger Montague's antitrust practice group is "a preeminent force in the Pennsylvania antitrust market, offering expert counsel to clients from a broad range of industries."

The *Legal 500*, a guide to worldwide legal services providers, ranked Berger Montague as a Top Tier Law Firm for Antitrust: Civil Litigation/Class Actions: Plaintiff in the United States in its 2020 guide and states that Berger Montague's antitrust department is "well-known for its heavy involvement in numerous matters pertaining to manipulation in the financial space."

- ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation:*** Berger Montague served as co-lead counsel for a national class including millions of merchants in the *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* against Visa, MasterCard, and several of the largest banks in the U.S. (*e.g.*, Chase, Bank of America, and Citi). The lawsuit alleged that merchants paid excessive fees to accept Visa and MasterCard cards because the payment cards, individually and together with their respective member banks, violated the antitrust laws. The challenged conduct included, *inter alia*, the collective fixing of interchange fees and adoption of rules that hindered any competitive pressure by merchants to reduce those fees. The lawsuit further alleged that defendants maintained their conspiracy even after both Visa and MasterCard changed their corporate forms from joint ventures owned by member banks to publicly-owned corporations following commencement of this litigation. On September 18, 2018, after thirteen years of hard-fought litigation, Visa and MasterCard agreed to pay as much as approximately $6.26 billion, but no less than approximately $5.56 billion, to settle the case. This result is the largest-ever class action settlement of an antitrust case. The settlement received preliminary approval on January 24, 2019. The settlement received final approval on December 16, 2019, for approximately $5.6 billion.

- ***In re Dental Supplies Antitrust Litigation:*** Berger Montague served as co-lead counsel for a class of dental practices and dental laboratories in *In re Dental Supplies Antitrust Litigation*, a suit brought against Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company, the three largest distributors of dental supplies in the United States. On September 7, 2018, co-lead counsel announced that they agreed with defendants to settle on a classwide basis for $80 million. The settlement received final approval on June 24, 2019. The suit alleged that the defendants, who collectively control close to 90 percent of the dental supplies and equipment distribution market, conspired to restrain trade and fix prices at anticompetitive levels, in violation of the Sherman Act. In furtherance of the alleged conspiracy, plaintiffs claimed that the defendants colluded to boycott and pressure dental manufacturers, dental distributors, and state dental associations that did business with or considered doing business with the defendants' lower-priced rivals. The suit claimed that, because of the defendants' anticompetitive conduct, members of the class were overcharged on dental supplies and equipment. In the 2019 Fairness Hearing, Judge Brian M. Cogan of the U.S. District Court for the Eastern District of New York said: "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

- ***In re Domestic Drywall Antitrust Litigation:*** Berger Montague served as co-lead counsel on behalf of a class of direct purchasers of drywall, in a case alleging that the dominant manufacturers of drywall engaged in a conspiracy to fix drywall prices in the U.S. and to abolish the industry's long-standing practice of limiting price increases for the duration of a construction project through "job quotes." Berger Montague represented a class of direct purchasers of drywall from defendants for the period from January 1, 2012 to January 31, 2013. USG Corporation and United States Gypsum Company (collectively,

"USG"), New NGC, Inc., Lafarge North America Inc., Eagle Materials, Inc., American Gypsum Company LLC, TIN Inc. d/b/a Temple-Inland Inc., and PABCO Building Products, LLC were named as defendants in this action. On August 20, 2015, the district court granted final approval of two settlements—one with USG and the other with TIN Inc.—totaling $44.5 million. On December 8, 2016, the district court granted final approval of a $21.2 million settlement with Lafarge North America, Inc. On February 18, 2016, the district court denied the motions for summary judgment filed by American Gypsum Company, New NGC, Inc., Lafarge North America, Inc., and PABCO Building Products. On August 23, 2017, the district court granted direct purchaser plaintiffs' motion for class certification. On January 29, 2018, the district court granted preliminary approval of a joint settlement with the remaining defendants, New NGC, Inc., Eagle Materials, Inc., American Gypsum Company LLC, and PABCO Building Products, LLC, for $125 million. The settlement received final approval on July 17, 2018, bringing the total amount of settlements for the class to $190.7 million.

▪ ***In re Currency Conversion Fee Antitrust Litigation:*** Berger Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was approved in October 2009, with a Final Judgment entered in November 2009. Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of claimants in an antitrust consumer class action. A subsequent settlement with American Express increased the settlement amount to $386 million. (MDL No. 1409 (S.D.N.Y)).

▪ ***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:*** Berger Montague was co-lead counsel in this antitrust class action brought on behalf of a class of thousands of Independent Truck Stops. The lawsuit alleged that defendant Comdata Network, Inc. had monopolized the market for specialized Fleet Cards used by long-haul truckers. Comdata imposed anticompetitive provisions in its agreements with Independent Truck Stops that artificially inflated the fees Independents paid when accepting the Comdata's Fleet Card for payment. These contractual provisions, commonly referred to as anti-steering provisions or merchant restraints, barred Independents from taking various competitive steps that could have been used to steer fleets to rival payment cards. The settlement for $130 million and valuable prospective relief was preliminary approved on March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order approving Class Counsel's fee request, entered contemporaneously with its order finally approving the settlement, the Court described this outcome as "substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case."

▪ ***Ross, et al. v. Bank of America (USA) N.A., et al.:*** Berger Montague, as lead counsel for the cardholder classes, obtained final approval of settlements reached with Chase, Bank of America, Capital One and HSBC, on claims that the defendant banks unlawfully

acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions. The case was brought for injunctive relief only. The settlements remove arbitration clauses nationwide for 3.5 years from the so-called "cardholder agreements" for over 100 million credit card holders. This victory for consumers and small businesses came after nearly five years of hard-fought litigation, including obtaining a decision by the Court of Appeals reversing the order dismissing the case, and will aid consumers and small businesses in their ability to resist unfair and abusive credit card practices. In June 2009, the National Arbitration Forum (or "NAF") was added as a defendant. Berger Montague also reached a settlement with NAF. Under that agreement, NAF ceased administering arbitration proceedings involving business cards for a period of three and one-half (3.5) years, which relief is in addition to the requirements of a Consent Judgment with the State of Minnesota, entered into by the NAF on July 24, 2009.

▪ ***Johnson, et al. v AzHHA, et al.:*** Berger Montague was co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel, causing class members to be underpaid. The court approved $24 million in settlements on behalf of this class of nurses. (Case No. 07-1292 (D. Ariz.)).

The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic competition, having achieved over $2 billion in settlements in such cases over the past decade, including:

▪ ***In re: Namenda Direct Purchaser Antitrust Litigation:*** Berger Montague is co-lead counsel for the class in this antitrust action brought on behalf of a class of direct purchasers of branded and/or generic Namenda IR and/or branded Namenda XR. It settled for $750 million on the very eve of trial. The $750 million settlement received final approval on May 27, 2020, and is the largest single-defendant settlement ever for a case alleging delayed generic competition. (Case No. 15-cv-7488 (S.D.N.Y.)).

▪ ***King Drug Co. v. Cephalon, Inc.:*** Berger Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of the prescription drug Provigil (modafinil). After nine years of hard-fought litigation, the court approved a $512 million partial settlement, then the largest settlement ever for a case alleging delayed generic competition. (Case No. 2:06-cv-01797 (E.D. Pa.)). Subsequent non-class settlements pushed the total settlement figure even higher.

▪ ***In re Aggrenox Antitrust Litigation:*** Berger Montague represented a class of direct purchasers of Aggrenox in in an action alleging that defendants delayed the availability of less expensive generic Aggrenox through, *inter alia*, unlawful reverse payment agreements. The case settled for $146 million. (Case No. 14-02516 (D. Conn.)).

- ▪ ***In re Asacol Antitrust Litigation:*** The firm served as class counsel for direct purchasers of Asacol HS and Delzicol in a case alleging that defendants participated in a scheme to block generic competition for the ulcerative colitis drug Asacol. The case settled for $15 million. (Case No. 15-cv-12730-DJC (D. Mass.)).

- ▪ ***In re Celebrex (Celecoxib) Antitrust Litigation***: The firm represented a class of direct purchasers of brand and generic Celebrex (celecoxib) in an action alleging that Pfizer, in violation of the Sherman Act, improperly obtained a patent for Celebrex from the U.S. Patent and Trademark Office in a scheme to unlawfully extend patent protection and delay market entry of generic versions of Celebrex. The case settled for $94 million. (Case No. 14-cv-00361 (E.D. VA.)).

- ▪ ***In re DDAVP Direct Purchaser Antitrust Litigation:*** Berger Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug DDAVP. Berger Montague achieved a $20.25 million settlement only after winning a precedent-setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent. (Case No. 05-2237 (S.D.N.Y.)).

- ▪ ***In re K-Dur Antitrust Litigation:*** Berger Montague served as co-lead counsel for the class in this long-running antitrust litigation. Berger Montague litigated the case before the Court of Appeals and won a precedent-setting victory and continued the fight before the Supreme Court. On remand, the case settled for $60.2 million. (Case No. 01-1652 (D.N.J.)).

- ▪ ***In re Loestrin 24 Fe Antitrust Litigation:*** Berger Montague served as co-lead counsel for the class of direct purchasers of brand Loestrin, generic Loestrin, and/or brand Minastrin. The direct purchaser class alleged that defendants violated federal antitrust laws by unlawfully impairing the introduction of generic versions of the prescription drug Loestrin 24 Fe. The case settled shortly before trial for $120 million (Case No. 13-md-2472) (D.R.I.).

- ▪ ***Meijer, Inc., et al. v. Abbott Laboratories:*** Berger Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws. Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra. This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California. (Case No. 07-5985 (N.D. Cal.)).

- ▪ ***Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.:*** Berger Montague served as co-lead counsel in a case challenging Warner Chilcott's alleged anticompetitive

practices with respect to the branded drug Doryx. The case settled for $15 million. (Case No. 2:12-cv-03824 (E.D. Pa.)).

▪ ***In re Oxycontin Antitrust Litigation:*** Berger Montague served as co-lead counsel on behalf of direct purchasers of the prescription drug Oxycontin. The case settled in 2011 for $16 million. (Case No. 1:04-md-01603 (S.D.N.Y)).

▪ ***In re Prandin Direct Purchaser Antitrust Litigation:*** Berger Montague served as co-lead counsel and recovered $19 million on behalf of direct purchasers of the diabetes medication Prandin. (Case No. 2:10-cv-12141 (E.D. Mich.)).

▪ ***Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.:*** Berger Montague served as co-lead counsel on behalf of direct purchasers alleging sham litigation led to the delay of generic forms of the brand drug Miralax. The case settled for $17.25 million. (Case No. 07-142 (D. Del.)).

▪ ***In re Skelaxin Antitrust Litigation:*** Berger Montague was among a small group of firms litigating on behalf of direct purchasers of the drug Skelaxin. The case settled for $73 million. (Case No. 2:12-cv-83 / 1:12-md-02343) (E.D. Tenn.)).

▪ ***In re Solodyn Antitrust Litigation:*** Berger Montague served as co-lead counsel representing a class of direct purchasers of brand and generic Solodyn (extended-release minocycline hydrochloride tablets) alleging that defendants entered into agreements not to compete in the market for extended-release minocycline hydrochloride tablets in violation of the Sherman Act. With a final settlement on the eve of trial, the case settled for a total of more than $76 million. (Case No. 14-MD-2503-DJC (D. Mass.)).

▪ ***In re Tricor Antitrust Litigation:*** Berger Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor. The case settled for $250 million. (No. 05-340 (D. Del.)).

▪ ***In re Wellbutrin XL Antitrust Litigation:*** Berger Montague served as co-lead counsel for a class of direct purchasers of the antidepressant Wellbutrin XL. A settlement of $37.5 million was reached with Valeant Pharmaceuticals (formerly Biovail), one of two defendants in the case. (Case No. 08-cv-2431 (E.D. Pa.)).

**Commercial Litigation**

Berger Montague helps business clients achieve extraordinary successes in a wide variety of complex commercial litigation matters. Our attorneys appear regularly on behalf of clients in high stakes federal and state court commercial litigation across the United States. We work with our clients to develop a comprehensive and detailed litigation plan, and then organize, allocate and deploy whatever resources are necessary to successfully prosecute or defend the case.

7

- **Robert S. Spencer, et al. v. The Arden Group, Inc., et al.:** Berger Montague represented an owner of limited partnership interests in several commercial real estate partnerships in a lawsuit against the partnerships' general partner. The terms of the settlement are subject to a confidentiality agreement. (Aug. Term, 2007, No. 02066 (Pa. Ct. Com. Pl., Phila. Cty. - Commerce Program)).

- **Forbes v. GMH:** Berger Montague represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities. The case which claimed securities fraud in connection with the transaction settled for a confidential sum which represented a significant portion of the losses experienced. (No. 07-cv-00979 (E.D. Pa.)).

**Commodities & Financial Instruments**

Berger Montague ranks among the country's preeminent firms for managing and trying complex Commodities & Financial Instruments related cases on behalf of individuals and as class actions. The firm's commodities clients include individual hedge and speculation traders, hedge funds, energy firms, investment funds, and precious metals clients.

- **In re Peregrine Financial Group Customer Litigation:** Berger Montague served as co-lead counsel in a class action which helped deliver settlements worth more than $75 million on behalf of former customers of Peregrine Financial Group, Inc., in litigation against U.S. Bank, N.A., and JPMorgan Chase Bank, N.A., arising from Peregrine's collapse in July 2012. The lawsuit alleges that both banks breached legal duties by allowing Peregrine's owner to withdraw and put millions of dollars in customer funds to non-customer use. (No. 1:12-cv-5546)

- **In re MF Global Holdings Ltd. Investment Litigation:** Berger Montague is one of two co-lead counsel that represented thousands of commodities account holders who fell victim to the alleged massive theft and misappropriation of client funds at the former major global commodities brokerage firm MF Global. Berger Montague reached a variety of settlements, including with JPMorgan Chase Bank, the MF Global SIPA Trustee, and the CME Group, that collectively helped to return approximately $1.6 billion to the class. Ultimately, class members received more than 100% of the funds allegedly misappropriated by MF Global even after all fees and expenses. (No. 11-cv-07866 (S.D.N.Y.).

- **In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation:** Berger Montague is one of two co-lead counsel representing traders of traders of gold-based derivative contracts, physical gold, and gold-based securities against The Bank of Nova Scotia, Barclays Bank plc, Deutsche Bank AG, HSBC Bank plc, Société Générale and the London Gold Market Fixing Limited. Plaintiffs allege that the defendants, members of the London Gold Market Fixing Limited, which sets an important benchmark price for gold, conspired to manipulate this benchmark for their collective benefit. (1:14-md-02548 (S.D.N.Y.)).

8

- ***In re Libor-Based Financial Instruments Antitrust Litigation***: Berger Montague represents exchange-based investors in this sprawling litigation alleging a conspiracy among many of the world's largest banks to manipulate the key LIBOR benchmark rate. LIBOR plays an important role in valuing trillions of dollars of financial instruments worldwide. The case, filed in 2011, alleges that the banks colluded to misreport and manipulate LIBOR rates for their own benefit. The banks' conduct damaged, among others, exchange-based investors who transacted in Eurodollar futures and options on the CME between 2005 and 2010. Eurodollar futures and options are keyed to LIBOR and are the world's most heavily traded short-term interest rate contracts. Following years of hotly contested litigation on behalf of these exchange-based investors, Berger Montague and its co-counsel achieved settlements with seven banks totaling more than $180 million. In September 2019, the Court granted preliminary approval of a plan of distribution for these settlement funds. A final approval hearing on the settlement is scheduled in September 2020. (No. 1:11-md-02262-NRB (S.D.N.Y.)).

**Consumer Protection**

Berger Montague's Consumer Protection Group protects consumers when they are injured by false or misleading advertising, defective products, data privacy breaches, and various other unfair trade practices. Consumers too often suffer the brunt of corporate wrongdoing, particularly in the area of false or misleading advertising, defective products, and data or privacy breaches.

- ***In re Public Records Fair Credit Reporting Act Litigation***: Berger Montague is class counsel in three class action settlements involving how the big three credit bureaus, Experian, TransUnion, and Equifax, report public records, including tax liens and civil judgments. The settlements provide groundbreaking injunctive relief valued at over $100 billion and provide a streamlined process for consumers to receive uncapped monetary payments for claims related to inaccurate reporting of public records.

- ***In re: CertainTeed Fiber Cement Siding Litigation***: The firm, as one of two Co-Lead Counsel firms obtained a settlement of more than $103 million in this multidistrict products liability litigation concerning CertainTeed Corporation's fiber cement siding, on behalf of a nationwide class. (MDL No. 2270 (E.D. Pa.)).

- ***Countrywide Predatory Lending Enforcement Action:*** Berger Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

▪ ***In re Experian Data Breach Litigation***: Berger Montague served on the Executive Committee of this class action lawsuit that arose from a 2015 data breach at Experian in which computer hackers stole personal information including Social Security numbers and other sensitive personal information for approximately 15 million consumers. The settlement is valued at over $170 million. It consisted of $22 million for a non-reversionary cash Settlement Fund; $11.7 million for Experian's remedial measures implemented in connection with the lawsuit; and two years of free credit monitoring and identity theft insurance. The aggregate value of credit monitoring claimed by class members during the claims submission process exceeded $138 million, based on a $19.99 per month retail value of the service.

▪ ***In re Pet Foods Product Liability Litigation***: The firm served as one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food. The case settled for $24 million. Many terms of the settlement are unique and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover. (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).

▪ ***In re TJX Companies Retail Security Breach Litigation***: The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history. The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers. The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs. Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60. (No. 1:07-cv-10162-WGY, (D. Mass.)).

▪ ***In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:*** The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers. The breach was the largest known theft of credit card information in history. (No. 4:09-MD-2046 (S.D. Tex. 2009)).

▪ ***In re: Countrywide Financial Corp. Customer Data Security Breach Litigation***: The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rogue employee sold their information to unauthorized third parties. Settlement benefits included: (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept

Countrywide's prior offer of credit monitoring; and (iii) injunctive relief. The settlement was approved by the court in 2010. (3:08-md-01998-TBR (W.D. Ky. 2008)).

▪ ***In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation***: The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam. (MDL No. 1643 (E.D. La.)).

▪ ***Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.:*** The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system. After extensive discovery, a settlement was reached. (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

**Corporate Governance and Shareholder Rights**
Berger Montague protects the interests of individual and institutional investors in shareholder derivative actions in state and federal courts across the United States. Our attorneys help individual and institutional investors reform poor corporate governance, as well as represent them in litigation against directors of a company for violating their fiduciary duty or provide guidance on shareholder rights.

▪ ***Emil Rossdeutscher and Dennis Kelly v. Viacom:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class. (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

▪ ***Fox v. Riverview Realty Partners, f/k/a Prime Group Realty Trust, et al.:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $8.25 million for the class.

**Employee Benefits & ERISA**
Berger Montague represents employees who have claims under the federal Employee Retirement Income Security Act. We litigate cases on behalf of employees whose 401(k) and pension investments have suffered losses as a result of the breach of fiduciary duties by plan administrators and the companies they represent. Berger Montague has recovered hundreds of millions of dollars in lost retirement benefits for American workers and retirees, and also gained favorable changes to their retirement plans.

▪ ***Diebold v. Northern Trust Investments, N.A.:*** As co-lead counsel in this ERISA breach of fiduciary duty case, the firm secured a $36 million settlement on behalf of participants in retirement plans who participated in Northern Trust's securities lending program. Plaintiffs alleged that defendants breached their ERISA fiduciary duties by failing to manage properly two collateral pools that held cash collateral received from the securities lending program. The settlement represented a recovery of more than 25% of alleged class member losses. (No. 1:09-cv-01934 (N.D. Ill.)).

- **Glass Dimensions, Inc. v. State Street Bank & Trust Co.**: The firm served as co-lead counsel in this ERISA case that alleged that defendants breached their fiduciary duties to the retirement plans it managed by taking unreasonable compensation for managing the securities lending program in which the plans participated. After the court certified a class of the plans that participated in the securities lending program at issue, the case settled for $10 million on behalf of 1,500 retirement plans that invested in defendants' collective investment funds. (No. 1:10-cv-10588-DPW (D. Mass)).

- **In re Eastman Kodak ERISA Litigation**: The firm served as class counsel in this ERISA breach of fiduciary duty class action which alleged that defendants breached their fiduciary duties to Kodak retirement plan participants by allowing plan investments in Kodak common stock. The case settled for $9.7 million. (Master File No. 6:12-cv-06051-DGL (W.D.N.Y.)).

- **Lequita Dennard v. Transamerica Corp. et al.**: The firm served as counsel to plan participants who alleged that they suffered losses when plan fiduciaries failed to act solely in participants' interests, as ERISA requires, when they selected, removed and monitored plan investment options. The case settled for structural changes to the plan and $3.8 million monetary payment to the class. (Civil Action No. 1:15-cv-00030-EJM (N.D. Iowa)).

## Employment & Unpaid Wages

The Berger Montague Employment & Unpaid Wages Department works tirelessly to safeguard the rights of employees and devotes all of their energies to helping the firm's clients achieve their goals. Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

Berger Montague is at the forefront of class action litigation, seeking remedies for employees under the Fair Labor Standards Act, state wage and hour law, breach of contract, unjust enrichment, and other state common law causes of action.

Berger Montague's Employment & Unpaid Wages Group, which is co-chaired by Managing Shareholder Shanon Carson and Shareholder Sarah Schalman-Bergen, is repeatedly recognized for outstanding success in effectively representing its clients. In 2015, *The National Law Journal* selected Berger Montague as the top plaintiffs' law firm in the Employment Law category at the Elite Trial Lawyers awards ceremony. Portfolio Media, which publishes *Law360*, also recognized Berger Montague as one of the eight Top Employment Plaintiffs' Firms in 2009.

Representative cases include the following:

- **_Fenley v. Wood Group Mustang, Inc_**: The firm served as lead counsel and obtained a settlement of $6.25 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 2:15-cv-326 (S.D. Ohio)).

- **_Sanders v. The CJS Solutions Group, LLC_**: The firm served as co-lead counsel and obtained a settlement of $3.24 million on behalf of a class of IT healthcare consultants who allegedly did not receive overtime premiums for hours worked in excess of 40 per week. (Civil Action No. 17-3809 (S.D.N.Y.)).

- **_Gundrum v._ Cleveland Integrity Services, Inc.:** The firm served as lead counsel and obtained a settlement of $4.5 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 4:17-cv-55 (N.D. Okl.)).

- **_Fenley v._ Applied Consultants, Inc.:** The firm served as lead counsel and obtained a settlement of $9.25 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 2:15-cv-259 (W.D. Pa.)).

- **_Acevedo v. Brightview Landscapes, LLC_**: The firm served as co-lead counsel and obtained a settlement of $6.95 million on behalf of a class of landscaping crew members who allegedly did not receive proper overtime premiums for hours worked in excess of 40 per week. (Civil Action No. 3:13-cv-02529 (M.D. Pa.)).

- **_Jantz v. Social Security Administration:_** The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities. The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions. The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million. (EEOC No. 531-2006-00276X (2015)).

- **_Ciamillo v. Baker Hughes, Incorporated:_** The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who allegedly did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- **_Salcido v. Cargill Meat Solutions Corp.:_** The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks. This is one of the largest settlements of this type of case involving a single

13

plant in U.S. history. (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

▪ ***Chabrier v. Wilmington Finance, Inc.:*** The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages. A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class). (No. 06-4176 (E.D. Pa.)).

▪ ***Bonnette v. Rochester Gas & Electric Co.:*** The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment. (No. 07-6635 (W.D.N.Y.)).

**Environment & Public Health**

Berger Montague lawyers are trailblazers in the fields of environmental class action litigation and mass torts. Our attorneys have earned their reputation in the fields of environmental litigation and mass torts by successfully prosecuting some of the largest, most well-known cases of our time. Our Environment & Public Health Group also prosecutes significant claims for personal injury, commercial losses, property damage, and environmental response costs. In 2016, Berger Montague was named an Elite Trial Lawyer Finalist in special litigation (environmental) by *The National Law Journal*.

▪ ***Cook v. Rockwell International Corporation:*** In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium from the former Rocky Flats nuclear weapons site northwest of Denver, Colorado. Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million. Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Merrill G. Davidoff, David F. Sorensen, and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants." (No. 90-cv-00181-JLK (D. Colo.)). The jury verdict in that case was vacated on appeal in 2010, but on a second trip to the Tenth Circuit, Plaintiffs secured a victory in 2015, with the case then being sent back to the district court. A $375 million settlement was reached in May 2016, and final approval by the district court was obtained in April 2017.

▪ ***In re Exxon Valdez Oil Spill Litigation***: On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. The award was reduced to $507.5 million pursuant to a Supreme Court decision. David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts). Harold Berger served as a member of the organizing case management committee. H. Laddie Montague was specifically appointed by the federal court as one of

the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Alaska)).

- ▪ ***Drayton v. Pilgrim's Pride Corp.:*** The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time. A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F. Supp. 2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine). All of the cases settled on confidential terms in 2006. (No. 03-2334 (E.D. Pa.)).

- ▪ ***In re Three Mile Island Litigation:*** As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved. (C.A. No. 79-0432 (M.D. Pa.)).

## Insurance Fraud

When insurance companies and affiliated financial services entities engage in fraudulent, deceptive or unfair practices, Berger Montague helps injured parties recover their losses. We focus on fraudulent, deceptive and unfair business practices across all lines of insurance and financial products and services sold by insurers and their affiliates, which include annuities, securities and other investment vehicles.

- ▪ ***Spencer v. Hartford Financial Services Group, Inc.:*** The firm, together with co-counsel, prosecuted this national class action against The Hartford Financial Services Group, Inc. and its affiliates in the United States District Court for the District of Connecticut (*Spencer v. Hartford Financial Services Group, Inc.*, Case No. 05-cv-1681) on behalf of approximately 22,000 claimants, each of whom entered into structured settlements with Hartford property and casualty insurers to settle personal injury and workers' compensation claims. To fund these structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life. By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit - all of which was concealed from the settling claimants. On March 10, 2009, the U.S. District Court certified for trial claims on behalf of two national subclasses for civil RICO and fraud (256 F.R.D. 284 (D. Conn. 2009)). On October 14, 2009, the Second Circuit Court of Appeals denied The Hartford's petition for interlocutory appeal under Federal Rule of Civil Procedure 23(f). On September 21, 2010, the U.S. District Court entered judgment granting final approval of a $72.5 million cash settlement.

- ▪ ***Nationwide Mutual Insurance Company v. O'Dell:*** The firm, together with co-counsel, prosecuted this class action against Nationwide Mutual Insurance Company in West

Virginia Circuit Court, Roane County (*Nationwide Mutual Insurance Company v. O'Dell*, Case No. 00-C-37), on behalf of current and former West Virginia automobile insurance policyholders, which arose out of Nationwide's failure, dating back to 1993, to offer policyholders the ability to purchase statutorily-required optional levels of underinsured ("UIM") and uninsured ("UM") motorist coverage in accordance with West Virginia Code 33-6-31. The court certified a trial class seeking monetary damages, alleging that the failure to offer these optional levels of coverage, and the failure to provide increased first party benefits to personal injury claimants, breached Nationwide's insurance policies and its duty of good faith and fair dealing, and violated the West Virginia Unfair Trade Practices Act. On June 25, 2009, the court issued final approval of a settlement that provided a minimum estimated value of $75 million to Nationwide auto policyholders and their passengers who were injured in an accident or who suffered property damage.

**Predatory Lending and Borrowers' Rights**

Berger Montague's attorneys fight vigorously to protect the rights of borrowers when they are injured by the practices of banks and other financial institutions that lend money or service borrowers' loans. Berger Montague has successfully obtained multi-million-dollar class action settlements for nationwide classes of borrowers against banks and financial institutions and works tirelessly to protect the rights of borrowers suffering from these and other deceptive and unfair lending practices.

- ▪ ***Coonan v. Citibank, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Citibank and its affiliates in the United States District Court for the Northern District of New York concerning alleged kickbacks Citibank received in connection with its force-placed insurance programs. The firm obtained a settlement of $122 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ ***Arnett v. Bank of America, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the District of Oregon concerning alleged kickbacks received in connection with its force-placed flood insurance program. The firm obtained a settlement of $31 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ ***Clements v. JPMorgan Chase Bank, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against JPMorgan Chase and its affiliates in the United States District Court for the Northern District of California concerning alleged kickbacks received in connection with its force-placed flood insurance program. The firm obtained a settlement of $22,125,000 on behalf of a class of thousands of borrowers.

- ▪ ***Holmes v. Bank of America, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the Western District of North Carolina concerning alleged kickbacks received in connection with its force-placed wind insurance program. The firm obtained a settlement of $5.05 million on behalf of a class of thousands of borrowers.

**Securities & Investor Protection**

In the area of securities litigation, the firm has represented public institutional investors – such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which jury verdicts of $88.2 million and a RICO judgment of $239 million were obtained. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors.

- *In re Merrill Lynch Securities Litigation:* Berger Montague, as co-lead counsel, obtained a recovery of $475 million for the benefit of the class in one of the largest recoveries among the recent financial crisis cases. (No. 07-cv-09633 (S.D.N.Y.)).

- *In re: Oppenheimer Rochester Funds Group Securities Litigation:* The firm, as co-lead counsel, obtained a $89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc. (No. 09-md-02063-JLK (D. Col.)).

- *In re KLA Tencor Securities Litigation:* The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.)).

- *In re NetBank, Inc. Securities Litigation:* The firm served as lead counsel in this certified class action on behalf of the former common shareholders of NetBank, Inc. The $12.5 million settlement, which occurred after class certification proceedings and substantial discovery, is particularly noteworthy because it is one of the few successful securities fraud class actions litigated against a subprime lender and bank in the wake of the financial crisis. (No. 07-cv-2298-TCB (N.D. Ga.)).

- *The City Of Hialeah Employees' Retirement System v. Toll Brothers, Inc.:* The firm, as co-lead counsel, obtained a class settlement of $25 million against Home Builder Toll Brothers, Inc. (No. 07-cv-1513 (E.D. Pa.)).

- *In re Alcatel Alsthom Securities Litigation:* The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

- *Qwest Securities Action:* The firm represented New Jersey in an opt-out case against Qwest and certain officers, which was settled for $45 million. (C.A. No. L-3838-02 (Superior Court New Jersey, Law Division)).

**Whistleblower, *Qui Tam*, and False Claims Act**

Berger Montague has represented whistleblowers in matters involving healthcare fraud, defense contracting fraud, IRS fraud, securities fraud, and commodities fraud, helping to return more than $3 billion to federal and state governments. In return, whistleblower clients retaining Berger Montague to represent them in state and federal courts have received more than $500 million in rewards. Berger Montague's time-tested approach in whistleblower/*qui tam* representation involves cultivating close, productive attorney-client relationships with the maximum degree of confidentiality for our clients.

## Judicial Praise for Berger Montague Attorneys

Berger Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

**Antitrust**

From **Judge William E. Smith,** of the U.S. District Court for the District of Rhode Island:

"The degree to which you all litigated the case is – you know, I can't imagine attorneys litigating a case more rigorously than you all did in this case. It seems like every conceivable, legitimate, substantive dispute that could have been fought over was fought over to the max. So you, both sides, I think litigated the case as vigorously as any group of attorneys could. The level of representation of all parties in terms of the sophistication of counsel was, in my view, of the highest levels. I can't imagine a case in which there was really a higher quality of representation across the board than this one."

Transcript of the August 27, 2020 Hearing in ***In re Loestrin 24 Fe Antitrust Litigation***, No. 13-md-02472 (D.R.I.).

From **Judge Margo K. Brodie,** of the U.S. District Court for the Eastern District of New York:

"Class counsel has without question done a tremendous job in litigating this case. They represent some of the best plaintiff-side antitrust groups in the country, and the size and skill of the defense they litigated against cannot be overstated. They have also demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required…"

***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation***, No. 1:05-md-01720 (E.D.N.Y. 2019) (Mem. & Order).

18

From **Judge Brian M. Cogan**, of the U.S. District Court of the Eastern District of New York:

> "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

Transcript of the June 24, 2019 Fairness Hearing in *In re Dental Supplies Antitrust Litigation*, No. 16-cv-696 (E.D.N.Y.).

From **Judge Michael M. Baylson**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[C]ounsel…for direct action plaintiffs have done an outstanding job here with representing the class, and I thought your briefing was always very on point. I thought the presentation of the very contentious issues on the class action motion was very well done, it was very well briefed, it was well argued."

Transcript of the June 28, 2018 Hearing in *In re Domestic Drywall Antitrust Litigation*, No. MD-13-2437 at 11:6-11.

From **Judge Madeline Cox Arleo,** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> "I just want to thank you for an outstanding presentation. I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared. And really, your clients should be very proud to have such fine lawyering. I don't see lawyering like this every day in the federal courts, and I am very grateful. And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints. And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate. And I really appreciate that more than I can express."

Transcript of the September 9 to 11, 2015 Daubert Hearing in *Castro v. Sanofi Pasteur*, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.

From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

\* \* \*

> "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues …. The law firms of Berger Montague and Coughlin Stoia were indefatigable. They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

*In re Currency Conversion Fee Antitrust Litigation*, 263 F.R.D. 110, 129 (2009).


From **Judge Faith S. Hochberg,** of the United States District court for the District of New Jersey:

> "[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

*In re Remeron Antitrust Litig.*, Civ. No. 02-2007 (Nov. 2, 2005).


From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

*In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at \*5-\*6 (E.D. Pa. 2004).


From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

> "[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich., Nov. 26, 2002).


From **Judge Charles P. Kocoras,** of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . .There is no question that the results achieved by class counsel were extraordinary [.]"

Regarding the work of Berger Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte,** of the U.S. District Court for the District of Maryland:

"The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen,** of the U.S. District Court for the Eastern District of Pennsylvania:

"As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

"Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result."

*In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld,** of the U.S. District Court for the District of Connecticut:

"The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

**Securities & Investor Protection**

From **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York:

Court stated that lead counsel had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that this was "surely a very good result under all the facts and circumstances."

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y., July 27, 2009).

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

"The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

*In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, at *17-*18 (E.D. Pa. July 13, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett… [A]nd the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

*In re U.S. Bioscience Secs. Litig.*, No. 92-0678 (E.D. Pa. April 4, 1994).

From **Judge Wayne Andersen** of the U.S. District Court for the Northern District of Illinois:

"[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases…in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here…I would say this has been the best representation that I have seen."

*In re: Waste Management, Inc. Secs. Litig.*, No. 97-C 7709 (N.D. Ill. 1999).

From **Chancellor William Chandler, III** of the Delaware Chancery Court:

"All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this one. Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case. And I think that's a testimony – Mr. Valihura correctly says that's what they are supposed to do. I recognize that; that is their job, and they were doing it professionally."

*Ginsburg v. Philadelphia Stock Exchange, Inc.*, No. 2202 (Del. Ch., Oct. 22, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes."

"Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings. In short, it would be hard to equal the skill class counsel demonstrated here."

*In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605, n.1, 611 (E.D. Pa. 2003).

From **Judge Helen J. Frye**, United States District Judge for the U.S. District Court for the District of Oregon:

> "In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District."

> \* \* \*

> "Throughout the course of their representation, the attorneys at Berger Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence."

*In Re Melridge, Inc. Securities Litigation*, No. CV 87-1426-FR (D. Ore. April 15, 1996).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

> "[T]he co-lead attorneys have extensive experience in large class actions, experience that has enabled this case to proceed efficiently and professionally even under short deadlines and the pressure of handling thousands of documents in a large multi-district action... These counsel have also acted vigorously in their clients' interests...."

> \* \* \*

> "The management of the case was also of extremely high quality....  [C]lass counsel is of high caliber and has extensive experience in similar class action litigation....   The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines."

Commenting on class counsel, where the firm served as both co-lead and liaison counsel in *In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 177, 195 (E.D. Pa. 2000).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

"In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff, Esq. and Martin I. Twersky, Esq. of Berger Montague...."

* * *

"Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich."

Commenting in *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

## Civil/Human Rights Cases

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

"We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them.... For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

## Insurance Litigation

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case….[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs ... in this case has been consistently excellent….  [T]he defendant[s] ... mounted throughout the course of the five years the case pended, an extremely vigorous defense….  [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member of the class would have recovered a penny…. [I]t was an extremely complex and substantial class ... case ... [with an] outstanding result."

25

Regarding the work of Berger Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.,* in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (No. 3:05-cv-1681, D. Conn.).

**Customer/Broker Arbitrations**

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> "[H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, ... the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and ... the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

**Employment & Unpaid Wages**

From **Judge Timothy R. Rice**, United States Magistrate Judge for the U.S. District Court for the Eastern District of Pennsylvania:

> Describing Berger Montague as "some of the finest legal representation in the nation," who are "ethical, talented, and motivated to help hard working men and women."

Regarding the work of Berger Montague attorneys Sarah R. Schalman-Bergen and Camille F. Rodriguez in *Gonzalez v. Veritas Consultant Group, LLC, d/b/a Moravia Health Network*, No. 2:17-cv-1319-TR (E.D. Pa. March 13, 2019).

From **Judge Malachy E. Mannion**, United States District Judge for the U.S. District Court for the Middle District of Pennsylvania:

> "At the final approval hearing, class counsel reiterated in detail the arguments set forth in the named plaintiffs' briefing. … The court lauded the parties for their extensive work in reaching a settlement the court deemed fair and reasonable.

\* \* \*

"The court is confident that [class counsel] are highly skilled in FLSA collective and hybrid actions, as seen by their dealings with the court and the results achieved in both negotiating and handling the settlement to date."

***Acevedo v. Brightview Landscapes, LLC***, No. 3:13-cv-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017).

From **Judge Joseph F. Bataillon**, United States District Judge for the U.S. District Court for the District of Nebraska:

> [P]laintiffs' counsel succeeded in vindicating important rights. … The court is familiar with "donning and doffing" cases and based on the court's experience, defendant meat packing companies' litigation conduct generally reflects "what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA." (citation omitted). Plaintiffs' counsel perform a recognized public service in prosecuting these actions as a 'private Attorney General' to protect the rights of underrepresented workers.

> The plaintiffs have demonstrated that counsel's services have benefitted the class. … The fundamental policies of the FLSA were vindicated and the rights of the workers were protected.

Regarding the work of Berger Montague among other co-counsel in ***Morales v. Farmland Foods, Inc.***, No. 8:08-cv-504, 2013 WL 1704722 (D. Neb. Apr. 18, 2013).

From **Judge Jonathan W. Feldman**, United States Magistrate Judge for the U.S. District Court for the Western District of New York:

> "The nature of the instant application obliges the Court to make this point clear: In my fifteen years on the bench, no case has been litigated with more skill, tenacity and legal professionalism than this case. The clients, corporate and individual, should be proud of the manner in which their legal interests were brought before and presented to the Court by their lawyers and law firms."

> and

> "…the Court would be remiss if it did not commend class counsel and all those who worked for firms representing the thousands of current and former employees of Kodak for the outstanding job they did in representing the interests of their clients. For the last several years, lead counsel responsibilities were shared by

Shanon Carson …. Their legal work in an extraordinarily complex case was exemplary, their tireless commitment to seeking justice for their clients was unparalleled and their conduct as officers of the court was beyond reproach."

**Employees Committed For Justice v. Eastman Kodak,** (W.D.N.Y. 2010) ($21.4 million settlement).

**Other**

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

"On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia. We appreciate the considerable time you spent preparing and delivering this important course across the state. It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

## Founding Partner

**David Berger –** *1912-2007*
David Berger was the founder and the Chairman of Berger Montague. He received his A.B. *cum laude* in 1932 and his LL.B. *cum laude* in 1936, both from the University of Pennsylvania. He was a member of The Order of the Coif and was an editor of the *University of Pennsylvania Law Review*. He had a distinguished scholastic career including being Assistant to Professor Francis H. Bohlen and Dr. William Draper Lewis, Director of the American Law Institute, participating in the drafting of the first Restatement of Torts. He also served as a Special Assistant Dean of the University of Pennsylvania Law School. He was a member of the Board of Overseers of the Law School and Associate Trustee of the University of Pennsylvania. In honor of his many contributions, the Law School established the David Berger Chair of Law for the Improvement of the Administration of Justice.

David Berger was a law clerk for the Pennsylvania Supreme Court. He served as a deputy assistant to Director of Enemy Alien Identification Program of the United States Justice Department during World War II.

Thereafter he was appointed Lt.j.g. in the U.S. Naval Reserve and he served in the South Pacific aboard three aircraft carriers during World War II. He was a survivor of the sinking of the U.S.S. Hornet in the Battle of Santa Cruz, October 26, 1942. After the sinking of the Hornet, Admiral

Halsey appointed him a member of his personal staff when the Admiral became Commander of the South Pacific. Mr. Berger was ultimately promoted to Commander. He was awarded the Silver Star and Presidential Unit Citation.

After World War II, he was a law clerk in the United States Court of Appeals. The United States Supreme Court appointed David Berger a member of the committee to draft the Federal Rules of Evidence, the basic evidentiary rules employed in federal courts throughout the United States. David Berger was a fellow of the American College of Trial Lawyers, the International Society of Barristers, and the International Academy of Trial Lawyers, of which he was a former Dean. He was a Life Member of the Judicial Conference of the Third Circuit and the American Law Institute.

A former Chancellor (President) of the Philadelphia Bar Association, he served on numerous committees of the American Bar Association and was a lecturer and author on various legal subjects, particularly in the areas of antitrust, securities litigation, and evidence.

David Berger served as a member of President John F. Kennedy's committee which designed high speed rail lines between Washington and Boston. He drafted and activated legislation in the Congress of the United States which resulted in the use of federal funds to assure the continuance of freight and passenger lines throughout the United States. When the merger of the Pennsylvania Railroad and the New York Central Railroad, which created the Penn Central Transportation Company, crashed into Chapter 11, David Berger was counsel for Penn Central and a proponent of its reorganization. Through this work, Mr. Berger ensured the survival of the major railroads in the Northeastern section of the United States including Penn Central, New Jersey Central, and others.

Mr. Berger's private practice included clients in London, Paris, Dusseldorf, as well as in Philadelphia, Washington, New York City, Florida, and other parts of the United States. David Berger instituted the first class action in the antitrust field, and for over 30 years he and the Berger firm were lead counsel and/or co-lead counsel in countless class actions brought to successful conclusions, including antitrust, securities, toxic tort and other cases. He served as one of the chief counsel in the litigation surrounding the demise of Drexel Burnham Lambert, in which over $2.6 billion was recovered for various violations of the securities laws during the 1980s. The recoveries benefitted such federal entities as the FDIC and RTC, as well as thousands of victimized investors.

In addition, Mr. Berger was principal counsel in a case regarding the Three Mile Island accident near Harrisburg, Pennsylvania, achieving the first legal recovery of millions of dollars for economic harm caused by the nation's most serious nuclear accident. As part of the award in the case, David Berger established a committee of internationally renowned scientists to determine the effects on human beings of emissions of low-level radiation.

In addition, as lead counsel in *In re Asbestos School Litigation*, he brought about settlement of this long and vigorously fought action spanning over 13 years for an amount in excess of $200 million.

David Berger was active in Democratic politics. President Clinton appointed David Berger a member of the United States Holocaust Memorial Council, in which capacity he served from 1994-2004. In addition to his having served for seven years as the chief legal officer of Philadelphia, he was a candidate for District Attorney of Philadelphia, and was a Carter delegate in the Convention which nominated President Carter.

Over his lengthy career David Berger was prominent in a great many philanthropic and charitable enterprises some of which are as follows: He was the Chairman of the David Berger Foundation and a long time honorary member of the National Commission of the Anti-Defamation League. He was on the Board of the Jewish Federation of Philadelphia and, at his last place of residence, Palm Beach, as Honorary Chairman of the American Heart Association, Trustee of the American Cancer Society, a member of the Board of Directors of the American Red Cross, and active in the Jewish Federation of Palm Beach County.

David Berger's principal hobby was tennis, a sport in which he competed for over 60 years. He was a member of the Board of Directors of the International Tennis Hall of Fame and other related organizations for assisting young people in tennis on a world-wide basis.

### Selected Attorney Biographies

**Shanon J. Carson – Managing Shareholder**
Shanon J. Carson is a Managing Shareholder of the firm. He Co-Chairs the Employment & Unpaid Wages, Consumer Protection, Defective Products, and Defective Drugs and Medical Devices Departments and is a member of the Firm's Commercial Litigation, Employee Benefits & ERISA, Environment & Public Health, Insurance Fraud, Predatory Lending and Borrowers' Rights, and Technology, Privacy & Data Breach Departments.

Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale-Hubbell, and has received honors and awards from numerous publications. In 2009, Mr. Carson was selected as one of 30 "Lawyers on the Fast Track" in Pennsylvania under the age of 40. In both 2015 and 2016, Mr. Carson was selected as one of the top 100 lawyers in Pennsylvania, as reported by Thomson Reuters. In 2018, Mr. Carson was named to the *Philadelphia Business Journal*'s "2018 Best of the Bar: Philadelphia's Top Lawyers."

Mr. Carson is often retained to represent plaintiffs in employment cases, wage and hour cases for minimum wage violations and unpaid overtime, ERISA cases, consumer cases, insurance cases, construction cases, automobile defect cases, defective drug and medical device cases, product liability cases, breach of contract cases, invasion of privacy cases, false advertising cases, excessive fee cases, and cases involving the violation of state and federal statutes. Mr. Carson represents plaintiffs in all types of litigation including class actions, collective actions, multiple plaintiff litigations, and single plaintiff litigation. Mr. Carson is regularly appointed by federal courts to serve as lead counsel and on executive committees in class actions and mass torts.

Mr. Carson is frequently asked to speak at continuing legal education seminars and other engagements and is active in nonprofit and professional organizations. Mr. Carson currently serves on the Board of Directors of the Philadelphia Trial Lawyers Association (PTLA) and as a Co-Chair of the PTLA Class Action/Mass Tort Committee. Mr. Carson is also a member of the American Association for Justice, the American Bar Foundation, Litigation Counsel of America, the National Trial Lawyers - Top 100, and the Pennsylvania Association for Justice.

While attending the Dickinson School of Law of the Pennsylvania State University, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge. Mr. Carson currently serves on the Board of Trustees of the Dickinson School of Law of the Pennsylvania State University.

**Peter R. Kahana – Shareholder**
Peter R. Kahana is a Shareholder in the Insurance and Antitrust practice groups. He concentrates his practice in complex civil and class action litigation involving relief for insurance policyholders and consumers of other types of products or services who have been victimized by fraudulent conduct and unfair business practices.

Significant class cases vindicating the rights of insurance policyholders or consumers in which Mr. Kahana was appointed as co-class counsel have included: settlement in 2012 for $90 million of breach of fiduciary duty and negligence claims (certified for trial in 2009) on behalf of a class of former policyholder-members of Anthem Insurance Companies, Inc. ("Anthem") alleging the class was paid insufficient cash compensation in connection with Anthem's conversion from a mutual insurance company to a publicly-owned stock insurance company (a process known as "demutualization") (*Ormond v. Anthem, Inc., et al.*, USDC, S.D. Ind., Case No. 1:05-cv-01908 (S.D. Ind. 2012)); settlement in 2010 for $72.5 million of a nationwide civil RICO and fraud class action (certified for trial in 2009) against The Hartford and its affiliates on behalf of a class of personal injury and workers compensation claimants for the Hartford's alleged deceptive business practices in settling these injury claims for Hartford insureds with the use of structured settlements (*Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.*, 256 F.R.D. 284 (D. Conn. 2009)); settlement in 2009 for $75 million of breach of contract, Unfair Trade Practices Act and insurance bad faith tort claims on behalf of a class of West Virginia automobile policyholders (certified for trial in 2007) alleging that Nationwide Mutual Insurance Company failed to properly offer and provide them with state-required optional levels of uninsured and underinsured motorist coverage (*Nationwide Mutual Insurance Company v. O'Dell, et al.*, Circuit Court of Roane County, W. Va., Civ. Action No. 00-C-37); and, settlement in 2004 for $20 million on behalf of a class of cancer victims alleging that their insurer refused to pay for health insurance benefits for chemotherapy and radiation treatment (*Bergonzi v. CSO, USDC, D.S.D.*, Case No. C2-4096). For his efforts in regard to the Bergonzi matter, Mr. Kahana was named as the recipient of the American Association for Justice's Steven J. Sharp Public Service Award, which is presented annually to those attorneys whose cases tell the story of American civil justice and help educate state and national policymakers and the public about the importance of consumers' rights.

Mr. Kahana has also played a leading role in major antitrust and environmental litigation, including cases such as *In re Brand Name Prescription Drugs Antitrust Litigation* ($723 million settlement), *In re Ashland Oil Spill Litigation* ($30 million settlement), and *In re Exxon Valdez* ($287 million compensatory damage award and $507.5 million punitive damage award). In connection with his work as a member of the trial team that prosecuted *In re The Exxon Valdez*, Mr. Kahana was selected in 1995 to share the Trial Lawyer of the Year Award by the Public Justice Foundation.

## Lane L. Vines – Senior Counsel

Lane L. Vines's practice is concentrated in the areas of securities/investor fraud, consumer and *qui tam* litigation. For more than 17 years, Mr. Vines has prosecuted both class action and individual opt-out securities cases for state government entities, public pension funds, and other large investors. Mr. Vines also represents consumers in class actions involving unlawful and deceptive practices, as well as relators in *qui tam*, whistleblower and False Claims Act litigations. Mr. Vines is admitted to practice law in Pennsylvania, New Jersey and numerous federal courts.

Mr. Vines also has experience in the defense of securities and commercial cases. For example, he was one of the firm's principal attorneys defending a public company which obtained a pre-trial dismissal in full of a proposed securities fraud class action against a gold mining company based in South Africa. See *In re DRDGold Ltd. Securities Litigation*, 05-cv-5542 (VM), 2007 U.S. Dist. LEXIS 7180 (S.D.N.Y. Jan. 31, 2007).

During law school, Mr. Vines was a member of the Villanova Law Review and served as a Managing Editor of Outside Works. In that role, he selected outside academic articles for publication and oversaw the editorial process through publication.

Prior to law school, Mr. Vines worked as an auditor for a Big 4 public accounting firm and a property controller for a commercial real estate development firm, and served as the Legislative Assistant to the Minority Leader of the Philadelphia City Council.

Mr. Vines has achieved the highest peer rating, "AV Preeminent" in Martindale-Hubbell for legal abilities and ethical standards. Mr. Vines is admitted to practice law in Pennsylvania, New Jersey and several federal courts.

## Y. Michael Twersky – Associate

Y. Michael Twersky concentrates his practice primarily on representing plaintiffs in complex litigation, including on insurance, antitrust, and environmental matters.

In the past, Mr. Twersky has worked on a wide variety of insurance matters including an insurance case in which a Federal District Court found on Summary Judgement that a large insurance company had breached its policy when it denied benefits under an accidental death insurance plan. Mr. Twersky has also worked on a number of antitrust class actions alleging that pharmaceutical manufacturers wrongfully kept less expensive generic drugs off the market, in

violation of the antitrust laws, including: *In re Skelaxin (Metaxalone) Antitrust Litigation*, 1:12-md-02343 (E.D. Tenn.) ($73 million settlement in 2014), and *In re Solodyn Antitrust Litig.*, 14 MD 2503 (D. Mass.) (combined settlements in excess of $76 million in 2018). Mr. Twersky has also represented inmates in connection with allegations that various inmate calling services charged unreasonable rates and fees in violation of the Federal Communication Act.

Currently, Mr. Twersky is litigating a number of complex class actions related to insurance products, including proposed class actions in multiple forums against a workers' compensation insurance company alleging that the company deceptively sold illegal workers' compensation programs that were not properly filed with state regulators. *E.g.*, *Shasta Linen Supply, Inc. v Applied Underwriters et al.*, No. 2:16-cv-0158 (N.D. Cal.). Mr. Twersky is also involved in a proposed class action in Federal Court brought on behalf of Alaska-enrolled Medicaid Healthcare Providers against the developers of the Alaska Medicaid Management Information System Company alleging that providers were harmed as a result of the negligent and faulty design and implementation of the MMIS system. *See South Peninsula Hospital et al v. Xerox State Healthcare, LLC*, 3:15-cv-00177 (D. Alaska). Mr. Twersky is also involved in environmental litigation on behalf of various states to recover the costs of remediation for contamination to groundwater resources.

Mr. Twersky graduated from Temple University Beasley School of Law in 2011, where he was a member of the Rubin Public Interest Law Honors Society and a Class Senator. In addition, Mr. Twersky advised various clients in business matters as part of Temple University's Business Law Clinic.